| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**NORRIS, McLAUGHLIN & MARCUS, P.A.**<br>Morris S. Bauer, Esq.<br>Joseph R. Zapata, Jr., Esq.<br>Attorneys for the Debtor/Debtor-In-Possession<br>721 Route 202-206, Suite 200<br>P.O. Box 5933<br>Bridgewater, New Jersey 08807<br>(908) 722-0700 | |
| In Re:<br><br>PARADIGM ELIZABETH, LLC,<br><br>Debtor. | Case No.:   14-24901 (DHS)<br><br>Judge:   Hon. Donald H. Steckroth<br><br>Chapter:   11 |

**VERIFIED MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR
TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364**

Paradigm Elizabeth, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through counsel, Norris, McLaughlin & Marcus, P.A., respectfully submits this motion for entry of an order authorizing the Debtor to obtain post-petition financing pursuant to 11 U.S.C. § 364 (the "Motion") and respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion, pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 364 and Federal Rule of Bankruptcy Procedure 4001.

## PROCEDURAL HISTORY

4. The Debtor is a limited liability company under the laws of the State of New Jersey.

5. On July 21, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in order to preserve the value of its assets for the benefit of all of its creditors and other parties in interest.

6. The Debtor continues to manage its property and financial affairs as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

7. No trustee, examiner, or statutory creditors' committee has been appointed to date in this chapter 11 case (the "Chapter 11 Case").

## BACKGROUND

8. The Debtor owns real property identified as Block 1, Lot 1380.G7 a/k/a 631 Kapowski Road, Elizabeth, NJ ("Lot G7"). Prior to July 17, 2014, the Debtor also owned Block 1, Lot 1380.G8 a/k/a 581 Kapowski Road, Elizabeth, NJ ("Lot G8").[1]

9. The Tax Assessor values Lot G7 at $5,424,352.

10. The only secured claim encumbering Lot G7 is the tax sale certificate (the "G7 Tax Sale Certificate") that was purchased by Alterna Tax Certificate Fund for $125,682.05 carrying an interest rate of 18% and subsequently assigned to and is presently held by Osprey

---

[1] A tax sale foreclosure judgment was entered with respect to Lot G8 on July 17, 2014, four days prior to the Petition Date, which transferred title of Lot G8 to Empire TFI Jersey Holdings, LLC ("Empire"). The Debtor has filed a complaint to avoid the transfer of Lot G8 as either a fraudulent conveyance or a preferential transfer. See Case No. 14-2098. The redemption amount of Lot G8 approximated $1,101,108.13 as of May 12, 2014. The Tax Assessor valued Lot G8 at $3,606,628.

2

Investments, LLC ("Osprey"). As of the Petition Date, the redemption amount on the G7 Tax Sale Certificate allegedly approximated $935,887.20.

11. On October 8, 2014, Osprey filed a secured claim in the amount of $1,068,102.15.

12. The unsecured claims aggregate in excess of $24 MM.

**The Tern Landing Project**

13. Lot G7 and Lot G8 were previously owned by Tern Landing Development, LLC ("Tern Landing") along with Lot G1, Lot G2, Lot G3, Lot G4, Lot G5, Lot G10, and Lot G11 (collectively, along with Lot G7 and Lot G8, the "Tern Landing Lots").

14. On March 31, 2006, Tern Landing acquired the Tern Landing Lots, which aggregated an approximately 31 acre tract of land along Exit 13A of the New Jersey Turnpike near IKEA and the Jersey Gardens Mall (the "Tern Landing Project").

15. The Tern Landing Project was to be developed as 4000+ units of townhomes and rentals, 120,000 sq. ft. shopping center with a ferry terminal to New York City, 300,000 sq. ft. of office space and parking and other amenities.

16. Upon information and belief, in order to fund the Tern Landing Project, Tern Landing obtained loans from Mercury Credit Corp. ("Mercury") n/k/a Paradigm Capital Group, who loaned $14MM secured by Lot G7 and Lot G8, Bridge Funding, Inc. who loaned approximately $5,000,000 secured by Lot G1 and Lot G2, Mariner's Bank who loaned approximately $4,700,000 secured by Lot G4 and Lot G5, and West End/Mercury Short Term Mortgage Fund, LP, who loaned approximately $6.5 million to Tern Landing secured by Lot G3.

17. As a result of the real estate downturn, Tern Landing encountered financial trouble, and failed to make payments due on the various mortgages and on its property taxes.

3

18. Upon information and belief, along with Paradigm Capital Group, Bridge Funding, Inc., Mariner's Bank and West/End/Mercury Short Term Mortgage Fund, LP (collectively, the "Other Tern Landing Lenders") all commenced foreclosure actions against Tern Landing. Upon further information and belief, some of these Other Tern Landing Lenders experienced issues in their respective foreclosures as a result of lien priority disputes and possibly lot delineation discrepancy. Upon further information and belief, some of the Other Tern Landing Lenders lost lots to tax sale certificate holders.

**The Chapter 11 Case**

19. The Debtor commenced the within Chapter 11 Case to preserve and maximize the value of Lot G7 for the benefit of all creditors and to attempt to regain title to, or the value of, Lot G8 from Empire.

20. On October 2, 2014, the Debtor filed an application to retain Racebrook Marketing Concepts, LLC d/b/a Sheldon Good and Company, a nationally renowned real estate auction company to conduct an auction of Lot G7 and possibly Lot G8. See Dkt. No. 47.

21. On October 3, 2014, the Debtor filed a plan of reorganization (the "Plan") and disclosure statement (the "Disclosure Statement"). See Dkt. No. 48 and 49. The Plan and Disclosure Statement outline the Debtor's intention of using the Chapter 11 Case to effectuate a sale of Lot G7 and possibly Lot G8 through a controlled auction process.

22. Consistent with the Plan, on October 7, 2014, the Debtor filed a motion for the entry of an order (I)(A) approving bidding procedures in connection with the Debtor's sale of real property free and clear of claims, liens, encumbrances and interests, (B) approving the form and manner of notice of the sale and bidding procedures, and (C) setting the hearing date in connection with the sale; and (II)(A) authorizing and approving the sale to the highest and best

4

offer, (B) waiving the fourteen (14) day stay provided by Bankruptcy Rule 6004(h), and (C) granting related relief (the "Bidding Procedures Motion").  See Dkt. No. 52.

23.    On November 5, 2014, the Court entered an Order approving the Bidding Procedures Motion (the "Bidding Procedures Order").  See Dkt. No. 75.  In accordance with the Bidding Procedures Order, Sheldon Good, the Debtor's court-authorized auctioneer (the "Auctioneer"), began the process of advertising and showing Lot G7 and soliciting bids.  The deadline for submitting bids under the Bidding Procedures Order was December 10, 2014 (the "Bidding Deadline").

24.    As of the Bidding Deadline, the Debtor had received two offers for Lot G7 in the amount of $1,000,000 and $1,150,000, respectively, (collectively, the "Offers").  Both Offers were insufficient to provide a dividend to unsecured creditors.  As a result, the Debtor determined it was not in the best interest of the estate to proceed with an open-cry auction and that the auction process should be adjourned for a month.

25.    On December 18, 2014, at the scheduled sale hearing (the "Sale Hearing"), the Debtor requested a one month adjournment of the Sale Hearing.  The Debtor advised the Court of additional informal offers received to purchase not only Lot G7, but the adjacent lots making up the Tern Landing Development, as well as, a letter of intent for the purchase of Lot G7 and Lot G8 (which is the subject of an adversary proceeding) for amounts substantially in excess of the bids.  The Debtor also advised the Court that it would discuss the Offers with the offerees to see if either will increase their offers.

26.    In addition, the Debtor advised the Court that it had received a commitment letter for debtor-in-possession financing from Abacus Funding Solutions, LLC ("Abacus" or "Lender") to provide a loan to the Debtor in the amount of $1.5MM to satisfy the claim and lien

5

of Osprey (the "Abacus Commitment Letter"). A copy of the Abacus Commitment Letter is annexed hereto as <u>Exhibit</u> <u>A</u>.

27. At the Sale Hearing, the Court granted the Debtor's request for an adjournment of the Sale Hearing to January 27, 2014. The Court further instructed the Debtor that to the extent the Debtor sought to obtain debtor-in-possession financing, that the motion would be scheduled in conjunction with the adjourned Sale Hearing date.

**Proposed Post-Petition Financing**

28. The proposed loan from the Lender provides for funding to the Debtor in the amount of $1.5MM to satisfy the liens against Lot G7 (the "DIP Loan").

29. The salient terms of the DIP Loan as set forth in the Abacus Commitment Letter are as follows:

    a. Term: Twenty-four (24) months from the date of the closing;

    b. Interest: 12% per annum;

    c. Amortization: Interest only;

    d. Origination Fee: Two percent 2% payable by the Debtor at closing; and

    e. Security: The DIP Loan will be secured by: (1) a security interest in Lot G7; (2) and assignment of and security interest in all current and future leases related to Lot G7; (3) UCC-1 liens on all personal property; equipment and fixtures; and (4) a pledge of the outstanding interests in the Debtor.

30. David M. Kushner, the manager of the Debtor, has further agreed to execute a guaranty to the Lender in connection with the DIP Loan.

6

**REQUESTED RELIEF**

31. By this Motion, the Debtor seeks entry of an order, pursuant to sections 105(a) and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (i) authorizing the Debtor to obtain post-petition financing; (ii) granting secured liens to the Lender, as post-petition lender; and (iii) granting related relief.

32. The Debtor will use the proceeds of the DIP Loan to satisfy the claim of Osprey. The Debtor respectfully submits that once Osprey's claim is satisfied, the Debtor will be better positioned to obtain higher offers or participate in the sale of the entirety of the Tern Landing Development or just Lot G7 and/or Lot G8.

33. The Debtor has reached out to lending institutions and evaluated alternative sources of credit, including a commitment letter received from Mercury Mortgage Fund, LLC. ("Mercury"). The proposed financing being offer by Mercury, while providing for the same 24 month term and 12% interest rate as that being offered by Abacus, required the payment of much higher fees, including a 4% origination fee, and costs associated with the proposed funding.

34. The Debtor further submits that its members are in the business of providing similar types of financing by and through their other entities and that the financing being offered by Abacus is reasonable.

35. Having reviewed possible borrowing sources in the current credit market, the Debtor determined that its best opportunity to obtain the credit that it would need to satisfy the claim of Osprey and successfully reorganize on terms favorable to the Debtor is through the DIP Loan to be provided by the Lender.

**A.     Entering into the DIP Loan is an Exercise of the Debtor's Sound Business Judgment**

36.  The statutory predicates for the Debtor's entry into the DIP Loan require the exercise of the Debtor's sound business judgment.  Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances. Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its reasonable business judgment in obtaining credit.  See Bray v. Shenandoah Fed. Say. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

37.  Entry into the DIP Loan is an exercise of the Debtor's sound business judgment that warrants approval by the Court.  The Debtor negotiated with the Lender in good faith, at arm's-length, in order to obtain post-petition financing on terms favorable to the Debtor that satisfy the Debtor's needs with respect to satisfying the liens against Lot G7.  Based on the Debtor's own analysis, the Debtor has determined that the DIP Loan provides a greater amount of financing on more flexible terms and at a lower rate than any other reasonably available alternative.

38.  Specifically, the DIP Loan will provide the Debtor with $1.5MM in funding that the Debtor has determined should be sufficient to payoff the Osprey lien against Lot G7, continue to pay post-petition property taxes and allow the Debtor a better opportunity to explore

8

options for the sale of Lot G7 at an amount that will provide a meaningful return to the estate for the benefit of all creditors. Further, the interest rate to be charged under the DIP Loan is lower than the rate the Debtor could reasonably expect to obtain from any other lender, is six percent (6%) lower than the interest rate being charged under Osprey's G7 Tax Sale Certificate and represents, in the informed judgment of the Debtor, the best rate available to the Debtor for post-petition financing. No other lender has offered financing terms that are comparable to the terms offered by the Lender. As such, entering into the DIP Loan is an exercise of the Debtor's sound business judgment and should be approved by the Court.

**B.     The Debtor Should be Authorized to Obtain Post-Petition Financing on a Secured Basis**

39.     Section 364, of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured or superpriority basis. Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(l) of the Bankruptcy Code to obtain credit or incur debt:

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [Bankruptcy Code];
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

40.     Under Section 364 a Court may authorize a debtor-in-possession to obtain credit secured by a lien, senior or equal to a lien on property of the estate if: (1) such credit cannot otherwise be obtained; and (2) there is adequate protection of the interest of the holder of the lien

9

on the property of the estate on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364(d)(1). The debtor must satisfy both prongs of the two-prong test set forth in section 364(d)(1) before the court will authorize the type of funding contemplated." In re Reading Tube Industries, 72 B.R. 329, 331-322 (Bankr. E.D. Pa. 1987). Under the first prong of this test the debtor is required to show that "less onerous post-petition financing was unavailable." Id. at 322 (citing In re Beker Industries Corp., 58 B.R. 725, 736 (Bankr. S.D. N.Y. 1986); In re Phoenix Steel Corp., 39 B.R. 218, 222 (D. Del. 1984)). Section 364 does not "explicitly provide how extensive the debtor's efforts to obtain credit must be; therefore, the court must make its decisions on a case by case basis." In re Reading Tube Industries, 72 B.R. at 322. "[T]here is no duty to seek credit from every possible lender." Id. (quoting In re Snowshoe Co., Inc., 789 F.2d 1085, 1088 (4th Cir. 1986)). "Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders. We do, however, require the debtor to make an effort to carry the burden established in Section 364(d)." In re Reading Tube Industries, 72 B.R. at 332. This is a fact sensitive analysis and has been determined on a case by case basis. Id. (holding that a debtor had an obligation to contact more than one financial institution); In re Snowshoe Co., Inc., 789 F.2d at 1088 (holding that a debtor's efforts to obtain credit were sufficiently extensive, when the trustee contacted other institutions in the immediate geographic area).

41. The Debtor does not have any revenues from operations, precluding it from obtaining credit on an unsecured or administrative expense basis. The Lender will not provide the Debtor with post-petition financing on terms other than a secured basis and other than on the terms of the Order. In order to obtain the benefits to be provided under the DIP Loan, therefore, the Debtor must be allowed to provide the Lender with a secured lien against Lot G7, securing

10

the Debtor's repayment obligations under the DIP Loan, as provided in section 364(c) and (d) of the Bankruptcy Code.

42. The Debtor has demonstrated that it has been unable to obtain credit without granting a secured lien and that the requested relief is warranted. Further, there is adequate protection of Osprey's lien against Lot G7 as the financing will pay off Osprey's lien in full.

C. **The Lender Should Be Deemed A Good Faith Lender Under Section 364(e)**

43. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under [section 364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

44. The DIP Loan is the result of the Debtor's reasonable and informed determination that the Lender offered the Debtor the most favorable terms available on which to obtain needed post-petition financing, and of extended arm's-length, good faith negotiations between the Debtor and the Lender. The terms and conditions of the DIP Loan are fair and reasonable, and the proceeds from the DIP Loan will be used only for purposes that are permissible under the Bankruptcy Code. Accordingly, the Court should find that Abacus is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and is entitled to all of the protections afforded by that section.

45. Because the requested financing is reasonable and necessary to preserve property of the estate, the Debtor submits that the proposed financing from Abacus is in the best interest of the estate and should be authorized by the Court.

### NOTICE

46. Notice has been provided to (i) the Office of the United States Trustee; (ii) Keith A. Bonchi, Esq., counsel for Osprey Investments, LLC; (iii) all creditors and parties in interest; (iv) Abacus Funding Solutions, LLC; and (v) all other persons and entities that have requested notice pursuant to Fed. R. Bankr. P. 2002. The Debtor respectfully submits that such service constitutes good and sufficient notice.

47. The Debtor represents that the facts and circumstances set forth herein do not present novel questions of law, and, as such, respectfully requests that this Bankruptcy Court waive the requirement of the filing of a memorandum of law in accordance with D.N.J. LBR 9013-1(b).

**WHEREFORE**, the Debtor respectfully requests the entry of the Order, in the form submitted simultaneously herewith, and for such further relief as the Court deems just and proper.

    Respectfully Submitted,

    NORRIS, McLAUGHLIN & MARCUS, PA
    Attorneys for Paradigm Elizabeth, LLC

    By: /s/ Morris S. Bauer
        Morris S. Bauer

Dated: January 6, 2015

## VERIFICATION

David M. Kushner, of full age, hereby certifies and says:

1. I am the manager of Paradigm Elizabeth, LLC, the debtor and debtor-in-possession, and am fully familiar with the facts and circumstances set forth herein.

2. I have reviewed the factual information contained herein, and the same is true and accurate to the best of my knowledge and belief.

I hereby certify that the foregoing statements made by me are true. If any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
DAVID M. KUSHNER

Dated: January 6, 2015