<u>NOT FOR PUBLICATION</u>

**FILED**
JAMES J. WALDRON, CLERK

**JAN. 30, 2015**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

In Re:

**PARADIGM ELIZABETH, LLC,**

                Debtor.

Case No.:   14-24901 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

<u>**OPINION**</u>

**APPEARANCES:**

Norris, McLaughlin & Marcus, P.A.
Morris S. Bauer, Esq.
721 Route 202-206
Suite 200
P.O. Box 5933
Bridgewater, New Jersey  08807
*Counsel for Debtor*

Goldenberg, Mackler, Sayegh, Mintz,
 Pfeffer, Bonchi & Gill, P.C.
Keith A. Bonchi, Esq.
660 New Road
Suite 1-A
Northfield, New Jersey  08225
*Counsel for Creditors, Osprey Investments, LLC*
*and Empire TFI Jersey Holdings, LLC*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

This matter is before the Court upon the motion of Osprey Investments, LLC ("Osprey") and Empire TFI Jersey Holdings, LLC ("Empire") (collectively, the "Creditors") to dismiss the chapter 11 petition ("Petition") filed by Paradigm Elizabeth, LLC ("Debtor") as a bad faith filing pursuant to 11 U.S.C. § 1112(b). The Creditors assert that the Petition was filed in bad faith because the Debtor is a non-operating entity with no valid reorganizational purpose and that the filing was made merely to prevent the state law collection efforts of Osprey and Empire.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (F). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**FACTUAL BACKGROUND**

On September 19, 2006, Mercury Credit Corporation ("Mercury") loaned $14 million to Tern Landing Development, LLC ("Tern Landing") to help fund the development of a 31-acre commercial and residential real estate project along the New Jersey Turnpike in Elizabeth, New Jersey.[1] (See Cert. of David M. Kushner in Opp'n to Mot. to Dismiss the Case and For Relief from the Automatic Stay ("Kushner Cert.") at ¶¶ 7-8, Sept. 9, 2014, ECF No. 25) The project was to consist of approximately 4,000 townhomes, a 120,000 square foot shopping center with a ferry

---

[1] According to the Debtor, Mercury obtained the loaned funds from 72 individual participants ("Participants"), upon whose behalf Mercury acted as agent in administering the loan. (Kushner Cert. at ¶ 16)

terminal to New York City, and 300,000 square feet of office space. (*Id.* at ¶ 7) Tern Landing was granted subdivision approval in March 2006 and the property was divided into eight vacant real estate lots. (*Id.* at ¶ 9) The loan from Mercury ("Mercury Loan") was secured by a mortgage and security interest in two of these adjoining lots (the "Properties"), Block 1, Lot 1380.G7, also known as 631 Kapowski Road, Elizabeth, New Jersey ("Lot G7"), and Block 1, Lot 1380.G8 also known as 581 Kapowski Road, Elizabeth New Jersey ("Lot G8"). (*Id.* at ¶ 14) Due to the real estate downturn, Tern Landing experienced financial difficulties and failed to make payments on its property taxes and various mortgages.

In 2007, Mercury merged with Paradigm Capital Group, LLC ("PCG"), and PCG, as successor by merger to Mercury, filed a complaint to foreclose on the Properties in the Superior Court of New Jersey in August 2009. (*Id*. at ¶¶ 17-18) A foreclosure judgment was entered in favor of PCG, and, at a sheriff's sale of the Properties conducted on January 11, 2012, PCG was the lone bidder with a bid of $100. (*Id*. at ¶¶ 18-19) The Debtor was formed as a special purpose vehicle to take title to the Properties. (*Id*. at ¶ 5) On January 25, 2012, a Sheriff's deed (the "Sheriff's Deed") was issued conveying title in the Properties to the Debtor. The Sheriff's Deed was recorded on June 26, 2013, six months later. (*Id*. at ¶¶ 20-21)

Due to Tern Landing's failure to pay 2008 and 2009 real estate taxes on the Properties, a public tax sale was conducted on June 7, 2010. Alterna Tax Certificate Fund purchased the tax sale certificate for Lot G7 ("G7 Tax Sale Certificate") for $125,682.05 and shortly thereafter assigned it to FNA Jersey Lien Services, LLC ("FNA"). (*Id*. at ¶¶ 23-24) FNA filed a tax sale foreclosure complaint in November 2012, listing PCG, but not the Debtor, as a defendant. (*Id*. at ¶ 25) On May 2, 2014, the G7 Tax Sale Certificate was assigned to Osprey. (*Id*. at ¶ 32) Although Osprey

4

obtained a final judgment of foreclosure, the judgment was later vacated and the Debtor retained title to Lot G7. (*Id*. at ¶ 34-36)

US BNK CUST EMPIRE TAX FUND I ("US BNK") purchased the tax sale certificate for Lot G8 ("G8 Tax Sale Certificate") for $145,414.10. (*Id*. at ¶ 37) US BNK filed a tax sale foreclosure complaint in July 2012 and amended the complaint in April 2013 to add the Debtor and PCG as defendants. US BNK assigned the G8 Tax Sale Certificate to Empire on May 23, 2014. (*Id*. at ¶¶ 38, 42) On July 17, 2014, a final judgment of foreclosure was entered in favor of Empire, and title to Lot G8 was conveyed to Empire. (*Id*. at ¶ 43)

On July 21, 2014, the Debtor filed a chapter 11 bankruptcy Petition as a single asset real estate company. (*Id*. at ¶ 51) The Debtor admits that the purpose of the filing was to stay the tax sale foreclosure action on Lot G7 and to avoid the final foreclosure judgment in favor of Empire and recover Lot G8 for the benefit of the estate and its creditors. The Debtor's liabilities include Osprey's tax sale certificate,[2] the City of Elizabeth, the unsecured claims of the Debtor's pre-petition attorneys, and a disputed unsecured claim held by participants of the loan from Mercury to the development project. (*Id*. at ¶ 6) The municipal tax assessor recently valued Lot G7 at $5,424,352 and Lot G8 at $3,606,628. (*Id*. at ¶ 72)

Since filing, the Debtor has obtained, over objection, multiple rounds of debtor-in-possession ("DIP") financing, which have enabled it to pay post-petition property taxes on Lot G7 and to market the property to prospective purchasers. In November 2014, the Court approved the Debtor's application to retain an auctioneer, who has engaged in efforts to market and sell Lot G7. (*See* Final Order Authorizing Debtor-in-Possession Financing as an Administrative Expense, ECF No. 73)

---

[2] Osprey filed a secured proof of claim in the amount of $1,068,102.15 on October 8, 2014.

Since retaining the auctioneer, the Debtor has received at least two bids to purchase Lot G7. While the bids are sufficient to cover Osprey's lien, the Debtor continues to market Lot G7 in the hope of obtaining a higher and better offer. On January 29, 2015, the Debtor and Osprey entered into a consent order ("Consent Order") authorizing $1,500,000 in DIP financing. (Consent Order Authorizing the Debtor to Obtain Post-Petition Financing Secured by a Lien Against the Debtor's Real Property Pursuant to 11 U.S.C. Section 364(c), ECF No. 90) The Consent Order provides that the Debtor will use the proceeds of the financing to redeem the G7 Tax Sale Certificate in full so that the DIP lender may receive a senior lien on the property. (*Id.*)

## DISCUSSION

The Creditors argue that the case should be dismissed as a bad faith filing because the Debtor is a non-operating entity created on the eve of the bankruptcy proceeding for no purpose other than to prevent them from exercising their state law rights. They assert that matter is a two-party dispute that does not belong in bankruptcy court because the Debtor has no employees or operations and there is no reasonable chance of rehabilitation.

Section 1112(b) of the Bankruptcy Code gives courts the discretion to convert or dismiss a case for "cause" upon the motion of a party in interest. 11 § U.S.C. 1112(b) ("[T]he court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause."). Although "bad faith" is not one of the examples of "cause" enumerated in section 1112(b), it is well established that a lack of good faith in filing constitutes cause for dismissal. *See In re SGL Carbon Corp.*, 200 F.3d 154, 160-62 (3rd Cir. 1999); *In re General Growth Props. Inc.*, 409 B.R. 43, 55-56 (Bankr. S.D.N.Y. 2009). If a moving party presents sufficient evidence placing the debtor's good faith at issue, the

burden of proving that a chapter 11 petition was filed in good faith is on the petitioner. *In re Zais Inv. Grade Ltd. VII*, 455 B.R. 839, 848 (Bankr. D.N.J. 2011); *In re 15375 Mem'l Corp.*, 589 F.3d 605, 618 (3rd Cir. 2009). Two inquiries are especially relevant to the issue of good faith: "(1) whether the petition serves a valid bankruptcy purpose, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *In re 15375 Mem'l Corp.*, 589 F.3d at 618 (internal quotations omitted).

Maximizing the value of the debtor's estate is a valid bankruptcy purpose. *Id.* at 619; *see also In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 119 (3rd Cir. 2004). Even if the debtor is not a going concern and the bankruptcy was filed for liquidation purposes, a petition may maximize value for creditors if it adds or preserves value that would be unavailable to creditors outside of bankruptcy. *Integrated Telecom*, 384 F.3d at 120 ("Reorganization . . . is not the only appropriate use of Chapter 11 since the Code clearly contemplates liquidating plans under 11 U.S.C. § 1123(b)(4)."); *15375 Mem'l Corp.*, 589 F.3d at 619-20 ("To say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some value that otherwise would be lost outside of bankruptcy.") (internal quotations omitted). Thus, "so long as the liquidation plan is maximizing the value of the debtor's estate, it serves a valid bankruptcy purpose and meets the good faith requirement." *Integrated Telecom*, 384 F.3d at 120 n.4

The absence of good faith is a question of fact. *In re SB Properties, Inc.,* 185 B.R. 198, 204 (E.D. Pa. 1995). Determining whether a plan was filed in "good faith" requires a court to examine the totality of the circumstances and facts surrounding the filing. *15375 Mem'l Corp.*, 589 F.3d at 619-20. Factors particularly relevant to this determination include the following:

(1) the debtor has few or no unsecured creditors;

(2) there has been a previous bankruptcy petition by the debtor or a related entity;

(3) the prepetition conduct of the debtor has been improper;

(4) the petition effectively allows the debtor to evade court orders;

(5) there are few debts to non-moving creditors;

(6) the petition was filed on the eve of foreclosure;

(7) the foreclosed property is the sole or major asset of the debtor;

(8) the debtor has no ongoing business or employees;

(9) there is no possibility of reorganization;

(10) the debtor's income is not sufficient to operate;

(11) there was no pressure from non-moving creditors;

(12) reorganization essentially involves the resolution of a two-party dispute;

(13) a corporate debtor was formed and received title to its major assets immediately before the petition; and

(14) the debtor filed solely to create the automatic stay.

*SB Properties, Inc.*, 185 B.R. at 205. While each of the above factors should be taken into consideration, they should not be rigidly applied. *See In re Walden Ridge Development, LLC*, 292 B.R. 58, 64 (Bankr. D.N.J. 2003). Even if some of these circumstances are present, as long as a debtor is "motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure to hinder creditors, bad faith is not

present in a chapter 11 case." *In re Clinton Centrifuge, Inc.*, 72 B.R. 900, 905 (Bankr. E.D. Pa. 1987).

Here, although the Debtor candidly admits that its chapter 11 Petition was motivated by a desire to prevent Osprey's foreclosure and preserve its interests in the Properties, the case was not filed in bad faith because the Debtor has a very reasonable chance of confirming a liquidating plan that will maximize the value of the estate for the benefit of creditors. The recent appraisals conducted by the municipal tax assessor supports the Debtor's business judgment that bankruptcy is in the best interests of creditors. Lot G7 was assessed at $5,424,352, and as of the Petition date the outstanding liability on the G7 Tax Sale Certificate was approximately $936,887.20. (Kushner Cert. at ¶¶ 6, fn. 1) Thus, even if the lot was overvalued by the tax assessor or has declined in value since it was appraised, there is still a reasonable probability that a significant equity cushion exists from which the estate and creditors other than Osprey may benefit. The Creditors have not demonstrated any special circumstances that would render the Debtor unlikely to be able to sell Lot G7 at a price in excess of its encumbrances, and the Debtor is entitled to use the bankruptcy process to delay the foreclosure to achieve this result.[3] *See In re Harmony Holdings, LLC*, 393 B.R. 409, 420 (Bankr. D.S.C. 2008) ("When there is little or no evidence suggesting bad faith, as in the present case, even a slim possibility of reorganization should be given a chance.").

---

[3] Additionally, while the merits of the Debtor's position are left for a later date, the Debtor has filed an adversary proceeding against Empire seeking to avoid the final judgment of foreclosure entered in favor of Empire as a fraudulent or preferential transfer. Similar to Lot G7, there is a reasonable chance that the market value of Lot G8 is significantly greater than the value of the tax sale certificate. If the Debtor is successful in recovering Lot G8, the bankruptcy will have created an even greater benefit for the estate. The Debtor has the right to explore the possibility of using the preferential transfer and fraudulent transfer provisions of the Bankruptcy Code for this purpose. *See In re 15375 Mem'l Corp.*, 589 F.3d 605, 620 (3rd Cir. 2009) (holding that a petition was filed in good faith may exist where it gives the Debtor the opportunity to "preserve value that would otherwise be unavailable to creditors outside of bankruptcy.").

Contrary to the Creditors' suggestion, the facts do not indicate that this is a case of "new debtor's syndrome," where a shell entity is created on the eve of bankruptcy to isolate a business's liabilities. The Debtor was formed on March 25, 2012, more than two years prior to the bankruptcy filing and several months prior to when the tax sale foreclosure complaints were filed.[4] While the deed to the Properties was transferred to the Debtor to isolate liability, transferring property to a special purpose vehicle is a common practice in the real estate business and is not a factor that weighs against a finding of good faith. *See Walden Ridge,* 292 B.R. at 63-64 ("Single-asset entities are routinely utilized for real estate acquisition and development. Anything different would be an unusual business practice."). Indeed, from a practical perspective, the alternative to filing for chapter 11 would have been to simply allow Osprey to obtain a final judgment of foreclosure on its tax sale certificate. While this outcome would have resulted in a windfall for Osprey, Osprey's profit would come at the expense of the Debtor and its other creditors. The Debtor filed for bankruptcy for the legitimate purpose of exploring the possibility that Lot G7 will generate a greater return in a court-approved sale process than outside of bankruptcy. Courts have held that a case is not necessarily filed in bad faith simply because it was intended to prevent a creditor's foreclosure and provide the debtor additional time to solicit higher offers for its property. *See In re McStay*, 82 B.R. 763, 768 (Bankr. E.D. Pa.1988) ("In and of itself, filing to frustrate the execution efforts of one particular creditor is not an illegitimate bankruptcy purpose."). Thus, under the circumstances, that the case was filed to prevent Osprey from completing its foreclosure does not weigh against a finding of good faith.

---

[4] (*See* Br. in Supp. of Mot. of Osprey Investments, LLC as Assignee of FNA Jersey Lien Services, LLC and Empire TFI Jersey Holdings, LLC As Assignee of US BNK CUT EMPIRE TAX FUND I to Dismiss Case and for Relief from the Automatic Stay ("Creditors' Br.") at 14, Aug. 13, 2014, ECF No. 15-7)

A lack of bad faith is further supported by the fact that the bankruptcy filing has not prejudiced the rights of Osprey or any other creditor. Pursuant to New Jersey tax sale certificate law, Osprey's municipal tax lien retains priority over all other interests with the exception of any subsequently imposed tax liens. *See* N.J.S.A. 54:5-9. As long as the Debtor continues to be able to obtain the financing needed to pay post-petition property taxes on Lot G7, additional tax liens cannot accrue and Osprey's interest will not be harmed. If a sale is not imminent and the Debtor fails to continue to pay property taxes, Osprey may show that it is not adequately protected and move for relief from the automatic stay. Especially when the bankruptcy proceeding is at an early stage, dismissal is not appropriate when no creditors have not been prejudiced in any way by the filing. *See Walden Ridge*, 292 B.R. at 58 (noting that "dismissals of Chapter 11 cases caused by a debtor's bad faith routinely show elements of prejudice to one or more creditor classes."); *Harmony Holdings, LLC*, 393 B.R. at 420 ("At this relatively early stage, absent a showing of bad faith and complete futility, there is no reason to dismiss these cases.").

Finally, the Debtor's post-petition activities are further evidence that the case was not filed in bad faith to hinder creditors' collection efforts. Since filing, the Debtor has successfully obtained multiple rounds of post-petition financing. On September 18, 2014, the Court approved an interim order approving DIP financing that enabled the Debtor to pay property taxes that had accrued since August 2014. (Interim Order Authorizing Debtor-in-Possession Financing as an Administrative Expense Pursuant to 11 U.S.C. § 364(b), ECF No. 38) In November, the Court approved a $250,000 DIP financing arrangement and the Debtor's application to retain an auctioneer to market Lot G7. As noted earlier, since retaining the auctioneer, the Debtor has received two bids to purchase Lot G7. While the bids were sufficient to cover Osprey's lien, the Debtor continues to market the

11

Properties in the hopes of obtaining a higher and better offer.  Thus, the Debtor's activities indicate that the prospect of a sale at a price greater than the encumbrances is more than mere wishful thinking.  Moreover, the Debtor recently received a $1,500,000 DIP financing commitment that will enable it to redeem Osprey's tax sale certificate in full.  (*See* Proposed Loan for $1,500,000.00 Secured by a First Mortgage on The Property Located at Section 4, Block 1, Lot 1380.G7, Elizabeth, NJ, ECF No. 82-3)   That the Debtor was able to obtain such financing demonstrates that the Petition was not filed simply to hinder Osprey's ability to recover the debt it is owed.   The Debtor believes that freeing Lot G7 from this encumbrance is likely to increase the desirability of the real estate in the eyes of potential purchasers, and this is yet another indication that the Petition was filed for the legitimate purpose of marketing the property and generating the highest possible price through a sale.  *See SB Properties, Inc.*, 185 B.R. at 204 (citing *In re Business Finance Corp.*, 451 F.2d 829, 834 (3d Cir. 1971)) (finding that plan was filed in good faith where "it was reasonable to expect that a plan could be effectuated; that there was opportunity and need for reorganization; and that the petition was filed with honest intention of effecting it and not for the purpose of hindering and delaying creditors.").

Because the Court is satisfied that the instant proceeding was filed to "create or preserve some value that would be lost—not merely distributed to a different stakeholder—outside of bankruptcy," it finds that the Petition was filed in good faith. *Integrated Telecom,* 384 F.3d at 129.

## **CONCLUSION**

For the above reasons, the Court finds that the instant Petition was not filed in bad faith. Accordingly, the Creditors' motion to dismiss the case as a bad faith filing pursuant to section 1112(b) is denied.

An Order in conformance with this Opinion has been entered by the Court and is attached hereto.

*s/* *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: January 30, 2015